IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAVINA JOHNSON, | ) |
|     Plaintiff, | ) No. 15 C 9260 |
| v. | ) Magistrate Judge M. David Weisman |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Lavina Johnson appeals the Commissioner's determination that her disability ended as of June 1, 2010. For the reasons set forth below, the Court reverses the Commissioner's decision.

### Background

On June 27, 2003, the Commissioner found plaintiff to be disabled as of September 9, 2002 due to "affective/mood disorder, anxiety related disorder." (R. 126, 153.) On June 2, 2010, the Commissioner sent plaintiff a notice of disability cessation, which was affirmed on August 16, 2012. (R. 150-52, 169-81.) Plaintiff requested a hearing, which was held before an Administrative Law Judge on September 10, 2013 and March 18, 2014. (R. 28-61, 62-120.) On April 10, 2014, the ALJ issued a decision finding that plaintiff's disability ended as of June 1, 2010. (R. 12-21.) The Appeals Council denied review (R. 1-4), leaving the ALJ's decision as

---

[1] On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited July 27, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The regulations prescribe an eight-part test for determining whether a claimant continues to be disabled. *See* 20 C.F.R. § 404.1594. At step one, the Commissioner determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the disability has ended. *Id.* If not, the Commissioner proceeds to step two, a determination of whether the claimant has an impairment or combination of impairments that meets or equals the severity of a listed impairment. 20 C.F.R. § 404.1594(f)(2). If so, the disability continues. *Id.* If not, the Commissioner proceeds to steps three and four, determinations of whether medical improvement has occurred and if the improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(3), (4). If there has been no medical improvement or the improvement is not related to the claimant's ability to work, the Commissioner proceeds to the fifth step, a determination of whether any exception from the two groups of exceptions to medical improvement applies. 20 C.F.R. § 404.1594(f)(5); *see* 20 C.F.R. § 404.1594(d), (e). If none applies, the disability continues. 20 C.F.R. § 404.1594(f)(5). If an exception from the second

group applies, the disability has ended. *Id.* If an exception from the first group applies or there has been medical improvement related to the claimant's ability to work, the Commissioner proceeds to step six, a determination of whether the claimant's current impairments are severe. 20 C.F.R. § 404.1594(f)(6). If they are not, the disability has ended. *Id.* If they are, the Commissioner proceeds to step seven, a determination of whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1594(f)(7). If she does, the disability has ended. *Id.* If she does not, the Commissioner proceeds to step eight, a determination of whether the claimant's RFC permits her to do other work. 20 C.F.R. § 404.1594(f)(8). If it does, the disability has ended. *Id.* If it does not, the disability continues. *Id.*

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity through June 1, 2010, the alleged end date of her disability. (R. 14.) At step two, the ALJ found that plaintiff has the medically determinable impairments of "remote history of seizure activity and history of self-reported increase in syncopal episodes"[2] but that the impairments do not meet or medically equal the severity of a listed impairment. (*Id.*) At steps three and four, the ALJ found that there had been medical improvement related to plaintiff's ability to work as of June 1, 2010. (R. 14-15.) At step six,[3] the ALJ found that plaintiff continued to have a severe impairment. (R. 16.) At step seven, the ALJ found that plaintiff had the RFC to perform her past relevant work, and thus was no longer disabled. (R. 16-20.)

Plaintiff contends that the ALJ improperly concluded that, as of June 1, 2010, she had a "remote history of seizure activity" when her treating physician, Dr. Earley, opined that she had an active seizure disorder. (*See* R. 602-04, 713-16.) An ALJ is required to give a treating

---

[2]Syncopal episodes are fainting spells. *See Dorland's Illustrated Medical Dictionary* at 1818 (32d ed. 2012).
[3]Because of the findings at steps three and four, step five is not at issue here.

3

physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R § 404.1527(c)(2).  The record here shows that:  (1) Dr. Earley treated plaintiff for seizures starting in July 2007; (2) plaintiff had an "[a]bnormal EEG [electroencephalogram][4] suggestive of bihemispheric epileptogenic focus"[5] in August 2010; (3) she had therapeutic levels of epilepsy medication in her blood from 2010-2013; (4) she was diagnosed by an emergency room doctor in 2012 with "[c]omplex partial seizure disorder"; and (5) plaintiff and her mother both attested to plaintiff's seizure activity.  (*See* R. 53-54, 87-96, 104-06, 602-14, 646, 660, 667, 682-83, 686-88, 713-16, 725.)  The record also shows that plaintiff had a normal EEG and MRI of her brain in 2009 and 2012, respectively (*see* R. 649, 680), but the Commissioner's own medical expert testified that "people [who] have seizures have a 20 percent chance of having a negative[, *i.e.*, normal] EEG during interictal periods."[6]  In short, the ALJ erroneously concluded that Dr. Earley's opinion is not entitled to controlling weight because it "is not consistent with or well-supported by the evidence of record."  (R. 18.)

Even if Dr. Earley's opinion were not entitled to controlling weight, the ALJ was still required to evaluate it in accordance with the regulatory factors.  *See* 20 C.F.R. § 404.1527(c); *see also Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) ("If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's

---

[4]"An electroencephalogram (EEG) is a test that detects electrical activity in [the] brain . . . ."  *See* http://www.mayoclinic.org/tests-procedures/eeg/basics/definition/prc-20014093 (last visited September 28, 2016).
[5]Epileptogenic focus is "the area of the cerebral cortex responsible for causing epileptic seizures."  *Dorland's Medical Dictionary for Health Consumers* (2007), *available at*, http://medical-ictionary.thefreedictionary.com/ epileptogenic+focus (last visited September 28, 2016).
[6]Interictal periods are the periods between seizures.  *See Dorland's Illustrated Medical Dictionary* at 949 (32d ed. 2012).

opinion."). Had the ALJ considered the fact that Dr. Earley regularly treated plaintiff for seven years, monitored the level of seizure medication in her blood, and referred her to a neurologist when he was no longer able to control her seizures, he may have given Dr. Earley's opinion more weight.

The ALJ's credibility finding/symptom evaluation[7] is also flawed. First, the ALJ said plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" without identifying which statements or portions of them he did not believe. (*See* R. 17.) Second, the ALJ seems to have based his credibility finding repeatedly on the fact that no medical personnel had ever seen plaintiff have a seizure and she was reportedly "doing well" shortly after her abnormal EEG. (*See* R. 17-18.) Yet the ALJ cites no authority for the notion that a seizure disorder diagnosis depends on a doctor's witnessing of seizure activity, and the listing for epilepsy suggests that there is no such requirement. *See* 20 C.F.R. 404, subpt. P, app. 1, 11.00(A) ("The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures *if professional observation is not available*.") (emphasis added).

Indeed, the ALJ seems to place an inordinate amount of weight on the fact that claimant's seizures have not been witnessed by medical professionals, a fact he says the independent medical examiner, Dr. Janese, found to be "extraordinary." (R. 18.) Yet Dr. Janese's testimony on this point is much less definitive. He describes the lack of observation of a seizure by a

---

[7] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.*, 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See id.* at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

5

medical provider as "kind of a mystery" (R. 43), but his explanation for the "mystery" is befuddling to the Court. Dr. Janese presumes that some seizures would occur in a medical setting, or necessitate the response of emergency medical services. (R. 43, 44.) There is no explanation in the record why either of these presumptions is correct. Thus, the Court finds the ALJ's reliance on the fact that "no medical professional, emergency medical technician or other trained professional has observed or witnessed a seizure event or the after effects of a seizure event" (R. 18), to be inappropriate based on the record before it.

Moreover, the fact that plaintiff was "doing well" after her abnormal EEG does not negate the seizure disorder diagnosis. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (noting that "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days"). For all of these reasons, the Court agrees with plaintiff that the ALJ's credibility determination/symptom evaluation was erroneous.

The ALJ also erred in giving "no weight" to the testimony of plaintiff's mother, Ms. Johnson. (*See* R. 19.) The regulations expressly contemplate that ALJs will use evidence from non-medical sources, including family members, "to show the severity of the [claimant's] impairment(s) and how it affects [her] ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Thus, it was not, as the ALJ said, improper for him to consider Ms. Johnson's testimony because she was not a medical source and lives with the claimant. Moreover, his conclusion that Ms. Johnson's testimony conflicts with the medical evidence depends on his interpretation of that evidence which, as discussed above, is flawed.

**Conclusion**

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [14], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order. This case is terminated.

**SO ORDERED.**                                   **ENTERED:   July 27, 2017**

_____
**M. David Weisman**
**United States Magistrate Judge**